Herman Baum v. Commissioner. Bessie Baum v. Commissioner.
Baum v. Commissioner
Docket Nos. 22508, 22509.
United States Tax Court
1951 Tax Ct. Memo LEXIS 287; 10 T.C.M. (CCH) 274; T.C.M. (RIA) 51082; March 21, 1951
*287 G. W. Parker, Jr., Esq., and A. E. Brooks, Esq., 2202 Fort Worth Nat. Bank Bldg., Ft. Worth 2, Tex., for the petitioners. D. Louis Bergeron, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: In these consolidated proceedings respondent determined income tax deficiencies against each of the petitioners for the calendar years 1945 and 1946 as follows: Docket
Amount of
No.
Name
Year
Deficiency
22508
Herman Baum
1945
$20,361.01
22508
Herman Baum
1946
2,272.96
22509
Bessie Baum
1945
20,361.01
22509
Bessie Baum
1946
2,510.45
The questions presented are these: (1) Whether, in computing the cost of automobiles sold by petitioners in 1945 and 1946, they may include therein sums paid by them in excess of the O.P.A. ceiling prices in arriving at their taxable income for those years. (2) Whether estimated amounts claimed to have been incurred for gasoline, repairs and drivers expense in 1945 and 1946 in connection with the purchase of automobiles in and around Chicago and for alleged entertainment expense in 1945 are deductible in arriving at petitioners' taxable income. (3) Whether *288 petitioners sustained a bad debt loss in 1946. Findings of Fact Petitioners Herman and Bessie Baum are residents of Fort Worth, Texas, and in accordance with the community property laws of Texas they filed separate income tax returns for the calendar years 1945 and 1946 with the collector of internal revenue for the second district of Texas. As head of the marital community, Herman Baum will be referred to as petitioner, and his acts were those of the community. 1. For 22 years, including the taxable years, petitioner has been in the used car business in Fort Worth, buying and selling automobiles. In 1945 the total cost of cars purchased by petitioner for resale, and which were sold by him in that year, was the sum of $360,272.08, of which amount $52,155.65 was paid by him in excess of the ceiling prices then established by the Office of Price Administration. The cost to petitioner of automobiles sold by him in 1946 was $216,018.77, and of that amount $8,516.38 represents the total amount paid by him in the purchase of the cars over and above the ceiling prices then established by the Office of Price Administration. Petitioners, in their income tax returns for 1945 and 1946, *289 included the amounts paid by them in excess of the O.P.A. ceiling prices in computing cost of the automobiles. Respondent, in his letter of deficiency, determined that these sums paid in excess of the O.P.A. ceiling prices should be excluded in computing the cost of automobiles, and did exclude same in his computation of the taxes due. 2. A majority of the used cars sold by petitioner in Fort Worth in 1945 and 1946 were personally purchased by him in and around Chicago and some in Philadelphia, second hand cars being more available in the midwestern and eastern markets than in and around Fort Worth. In these years petitioner made many trips to Chicago and vicinity and spent much time there in the purchase of cars. Petitioners in their returns claimed deductions as business expenses of $3,060 (1/2 by each) in 1945 and $1,770 (1/2 by each) in 1946 as the estimated cost of gasoline, repairs and drivers expenses in connection with the purchase of automobiles in and around Chicago, and $1,298.64 (1/2 by each) expended in 1945 for business entertainment, all of which was disallowed by the Commissioner "for lack of substantiation." On December 31, 1945, and December 31, 1946, petitioner's *290 accountant, at Petitioner's direction, made the following adjustment journal entries on petitioner's books: 12/31/45: Gas and Drivers Expense
$3,060.00
Entertainment Expense
1,294.64
Herman Baum, Drawing Account
$4,354.64
12/31/46: Gas and Drivers Expense
$1,770.00
Herman Baum, Drawing Account
$1,770.00
The above journal entries were the only book entries relating thereto and were based on estimates by petitioner made at the end of each year that he personally, as distinguished from the business, had expended about $10 per car for 306 cars purchased in Chicago and surrounding territory, for gasoline, oil, grease, charging batteries, and on drivers in getting the cars to a central point in Chicago from which they were later shipped to Fort Worth. While the entertainment expense for 1945 was based on petitioner's estimate that he spent approximately 40 weeks in Chicago during 1945 averaging $20 a week for entertainment, totaling $800, and $494.64 additional claimed to have been paid for three cases of whiskey. Petitioner claimed the entertainment expenses were incurred by him in occasional buying of meals or taking to the show or giving liquor to *291 persons who helped him locate used cars for sale, and that other buyers of used cars in Chicago indulged in such practice. No documentary evidence, such as cancelled checks or receipted hotel bills, were submitted in support of any of the above journal entries. Petitioner's estimate of sums expended for business expenses and business entertainment above set forth are all excessive in amount, and we find the reasonable, ordinary and necessary expenses so incurred by petitioner for such purposes were as follows: For business expenditures, 1945, $1,530; for 1946, $885; business entertainment in 1945, $649.32, each petitioner being entitled to deduct one-half of each of these amounts. 3. On April 16, 1946, petitioner and another jointly loaned $800 to one Bateman, taking his demand note therefor. Later, in 1946, petitioner loaned Bateman another $100. The $500 due petitioner by Bateman was still unpaid and on his books after 1946. The debt was turned over to petitioner's attorney who filed suit thereon subsequent to 1946. The suit was dismissed after 1948. In their 1946 returns petitioners claimed a $500 bad debt deduction, which was disallowed by the Commissioner on the ground that *292 the debt did not become worthless in that year. The debt did not become worthless in 1946 and was not then so regarded by petitioner. Opinion 1. The issue whether petitioners, in computing the cost of automobiles sold by them for income tax purposes, may include sums paid in excess of O.P.A. prices has been passed upon by this Court adversely to respondent's contention in . We adhere to our holding in that case and accordingly hold that all sums paid by petitioners in excess of the O.P.A. prices may be included by them in determining the cost of goods sold, and respondent's contrary determination is reversed. 2. Conceding that sums spent by petitioner in the alleged business and entertainment expenses are deductible, the testimony is uncertain as to the amounts petitioner claims to have so expended. Both claims are based upon estimates by petitioner and in each instance are fraught with much uncertainty as to the actual expenditure made. No documentary evidence, such as cancelled checks or receipted bills were submitted in support of the journal entries, except as to the liquor purchases, and as to them petitioner claims to have given *293 the cash tickets to the revenue agent who did not return them. As to entertainment expense of $20 a week, the items comprising the $20 estimate are not given by petitioner, merely his statement that he took parties to lunch or dinner or to the show, but does not show how many persons he so treated or how often, or the cost of the meals, or any other detail that might have gone into this lump sum estimate. In view of the sweeping generality of petitioner's testimony in support of this estimate, we are reluctant to accept it as being correct. Moreover, it appears from the record that petitioner has been allowed a deduction for 1945 of $3,102.60 for travel expenses, including meals and hotel bills, and in evaluating his evidence as to guest expenses it would appear possible that in some instances the meal expense for business guests might have been included in the $3,102.60 allowed. As to the liquor expenses, petitioner failed to give the name of any individual to whom any of the liquor was given, and did not testify what portion of the liquor was given to parties who he thought might help him in locating automobiles, and from the evidence we are unable to determine that fact. The *294 expense deduction of $3,060 for 1945 and $1,770 for 1946 is based upon petitioner's estimate of $10 per car expended in the alleged purchase of 306 and 177 cars, respectively, in midwestern and eastern markets, but principally in Chicago and vicinity. There is no breakdown in the items comprising the $10, and petitioner in his testimony does not undertake to enumerate same, but said, "the first two trips I determined around ten dollars per car would above cover the expense of the storage of the cars, gasoline to the garage, battery charges, minor repairs and the driver and meals." But this deduction was not intended to cover the cost of gasoline or other expense in driving the cars to Texas, but merely the cost of assembling the cars and preparing them for shipment home. This expenditure applied only to cars purchased away from Fort Worth. The record shows petitioner's total of all cars purchased in 1945 was 306 and 177 in 1946, and there is no evidence as to how many of these were purchased away from Fort Worth. In his petition it was alleged "that approximately 90 per cent" were so purchased, but petitioner's evidence fails to sustain this allegation. While testifying as a witness *295 petitioner was asked by respondent's counsel: "Q. How many would you estimate of the cars you purchased and sold during the year 1945 and 1946 were purchased in midwestern or eastern markets? "A. Well, the majority of them." No proof was made as to the definite number of cars so purchased, and from the record we are unable to ascertain this fact. In view of the uncertainty and indefinite nature of the testimony as to the amounts expended for business entertainment and also for business expenses, we have determined and found that only one-half of the amounts claimed in each is allowable and we accordingly hold that petitioners are entitled to a deduction in the amounts set forth in our ultimate findings of fact. These allowable deductions to petitioners are predicated upon the belief that petitioner did incur some expenses with respect to each of the estimated items, but in view of the uncertainty in amount, we have used our best judgment in determining the amounts actually expended for the purposes alleged. Such determinations are made pursuant to the practice based upon the Cohan case, , and in later cases by us to the same effect. *296 and cases there cited. 3. Respondent's disallowance of the bad debt deduction is sustained, the evidence failing to show that the debt became worthless in the taxable years. Decisions will be entered under Rule 50.